Micha Danzig (SBN 177923)
mdanzig@mintz.com
Ben L. Wagner (SBN 243594)
bwagner@mintz.com
Justin S. Nahama (SBN 281087)
jsnahama@mintz.com
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
3580 Carmel Mountain Road, Suite 300
San Diego, CA 92130
Telephone:  (858) 314-1500
Facsimile:   (858) 314-1501

Attorneys for Plaintiff
CROSSFIT, INC.

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| CROSSFIT, INC., | Case No. **'13CV1085 CAB JMA** |
|---|---|
| Plaintiff, | **COMPLAINT FOR:** |
| vs. | |
| DAVE P. PARISE, KRISTA PARISE, RESULTS PLUS, INC. d/b/a RESULTS PLUS PERSONAL TRAINING, INC., | 1. **CYBERSQUATTING (ALL DOMAIN NAMES);** 2. **CYBERSQUATTING (CERTIFICATION AND FACILITIES DOMAIN NAMES)** 3. **TRADEMARK INFRINGEMENT;** 4. **DILUTION OF FAMOUS AND DISTINCTIVE MARK;** 5. **COMMON LAW UNFAIR COMPETITION;** 6. **UNFAIR COMPETITION– CALIFORNIA BUSINESS & PROFESSIONS CODE §17200;** |
| Defendants. | **JURY DEMANDED** |

CrossFit, Inc. ("CrossFit" or "Plaintiff") brings this suit for cybersquatting, trademark infringement, trademark dilution of famous and distinctive mark, common law unfair competition, and unfair competition under California Business and Professions Code section 17200 et seq. against Results Plus, Inc., David Parise, and Krista Parise (collectively "Defendants") and alleges as follows:

## THE PARTIES

1.      Plaintiff CROSSFIT, INC. ("CrossFit") is a Delaware corporation with its principal place of business at 1250 Connecticut Avenue, Suite 200, Washington D.C. 20036.  CrossFit's internal media headquarters is in California, CrossFit has places of business throughout California, including a media headquarters in California.

2.      Upon information and belief, Results Plus, Inc. is a Connecticut corporation with its principal place of business at 3013 Dixwell Avenue Hamden, Connecticut 06518.

3.      On information and belief, Results Plus is a business specializing in fitness-services geared towards personal training and nutrition.

4.      Upon information and belief, Dave Parise and Krista Parise (collectively "individual Defendants") reside in or near East Haven, Connecticut, and were spouses at all relevant times alleged herein.  On information and belief, individual Defendants own Defendant Results Plus, Inc.

5.      Upon information and belief, Defendants are operating under a dba of "Results Plus Personal Training, Inc."

6.      Upon information and belief, beginning in 2001, individual Defendants created, designed, and/or maintained the websites associated with Results Plus, including, but not limited to "www.resultsplus.com."

7.      Defendants' actions alleged herein were those of themselves, their agents and/or licensees.

///

## JURISDICTION AND VENUE

8.     This Court's jurisdiction rests upon 15 U.S.C. §§ 1121(a), 28 U.S.C. §§ 1338(a) & (b), and 28 U.S.C. § 1367(a).

9.     This Court has jurisdiction over the federal trademark infringement and dilution claims pursuant to 15 U.S.C. § 1121(a) 28 U.S.C. § 1338(a).

10.     This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1338(b) and § 1367(a) as all claims herein form part of the same case or controversy.

11.     Personal jurisdiction exists over the Defendants because they purposefully directed their intentional and harmful conduct alleged below at this forum, and purposefully availed themselves of the benefits of California with respect to the claims alleged herein.  This includes registering the cybersquatting domain name crossfitvenicebeach.com , Venice Beach being in California, with the intent to profit from trademark infringement, cybersquatting, and unfair competition from CrossFit gyms located in Venice Beach, California.

12.     Venue is proper under 28 U.S.C. § 1391 and 28 U.S.C. §1400 because a substantial part of the events or omissions giving rise to the claim occurred here, and consumers and potential customers of CrossFit from this district are or are likely to be confused by the conduct of Defendants herein, with resulting damage to CrossFit. CrossFit has a substantial amount of CrossFitters located in this district, as well as long-standing affiliate relationships, and Defendants' use of the CROSSFIT name harms such persons.

## GENERAL ALLEGATIONS

### CrossFit's Origin

13.     CrossFit is the brand of a revolutionary fitness training regimen that has become the principal strength and conditioning program for many police academies and tactical operations teams, military special operations units, champion martial artists, and hundreds of professional and amateur athletes worldwide.

14.     With its emphasis on "functional movement", i.e., core to extremity movement patterns that mimic the tasks performed in all walks of life, and its unmatched effectiveness, CrossFit has also become the fitness and lifestyle choice for people of all ages and abilities.  This includes, without limit, children, pregnant women, service-members recovering from combat-related injuries, and senior citizens.

15.     As a former gymnast turned coach, Greg Glassman developed the CrossFit methodology and trademark around 1991.  From that point, Mr. Glassman called his training program "CrossFit" for more than 10 years, and launched the CrossFit.com website by 2001.

16.     CrossFit also offers several specialty "certifications," including, but not limited to, certifications in Olympic weightlifting, running, gymnastics, and rowing. This allows it to offer specialization to those authorized to use its name, as well as control the quality and reputation of its CROSSFIT trademark.

**Federal Trademark Registrations for CrossFit**

17.     CrossFit's federal U.S. trademark registrations in the CrossFit mark include U.S. Reg. Nos. 3,007,458; 3,826,111; 4,049,689,  4,122,681; and 4,245,769 for use with its many products and services (collectively, the "CrossFit Marks," attached hereto and incorporated herein as "Exhibit A"), a mark which has been in use since at least as early as 1985.

18.     The products and services covered by CrossFit's federal registrations include fitness training, an entertainment series for television and the internet featuring fitness, nutrition, sports and exercise, as well as fitness competitions, footwear, and clothing.

**CrossFit's Licensees/Affiliates**

19.     CrossFit has evolved into an extremely valuable fitness brand with more CrossFit gyms than Gold's Gym and 24 Hour Fitness Gyms combined.

///

20.     CrossFit licenses the CROSSFIT brand to gyms known in the community as "Affiliates," which operate gyms often referred to as "boxes."

21.     Currently, there are over 6,000 licensed Affiliates throughout the world.

22.     CrossFit provides a nationally standardized accreditation program (ANSI, the American National Standards Institute) to persons who desire to become licensed CrossFit Affiliates.

23.     Licensed Affiliates are permitted to use the CROSSFIT Mark for their gym, including, but not limited to, in the gym's gym name, website, and apparel.

24.     A substantial portion of licensed Affiliates create a gym name that incorporates the CROSSFIT Mark combined with the gym's location, e.g., "CrossFit Boston" or "CrossFit Miami."

25.     Many licensed Affiliates create a gym website employing the CROSSFIT Mark and the gym's location within the URL, e.g., "www.crossfitboston.com" or "www.crossfitmiami.com." This is standard practice for a substantial number of Affiliates.

26.     CrossFit actively pursues misuse of its trademark which it becomes aware of. For those who misuse the valuable CrossFit trademark for their fitness instruction or gyms, CrossFit has successfully obtained injunctions against them based on the strength of its trademark, the exclusive right of use, and the potential confusion to consumers. This has included two injunctions granted in this Court, one against a terminated affiliated who attempted to retain use of the "CrossFit" name for their gym, and in April 2013 an injunction against a nutritional supplements company who attempted to use "X-Fit" fitness videos to promote their newly launched "X-Fit" supplement line geared at users of CrossFit. The injunction for "X-Fit" was based not only on trademark infringement, but upon evidence which the Court found sufficiently demonstrated the CROSSFIT mark was a "famous mark" under the Lanham Act in the United States and that use of "X-Fit" for exercise instruction would dilute its distinctiveness.

**Defendants' Scheme to Profit from the CROSSFIT Mark**

27. On information and belief, beginning on or after 2010, individual Defendants launched a multifaceted, deceptive scheme to pluck consumers away from CrossFit (and drive them to Results Plus) while simultaneously unlawfully profiting by exploiting the CROSSFIT Mark.

28. In furtherance of their scheme, on information and belief, individual Defendants began selectively purchasing various domain names from GoDaddy.com with URL's likely to be sought by future or existing licensed CrossFit Affiliates. On information and belief, GoDaddy.com is still the registrar for the "CrossFit" domains registered to Defendants.

29. On information and belief, from 2010 to the present, Defendants have purchased over 100 "CROSSFIT" domain names, intending to control and sell the domain names to future, licensed CrossFit Affiliates for profit, including at least the following existing domain names registered to Defendants:

1)   crossfitagawam.com

2)   crossfitansonia.com

3)   crossfitbeaconfalls.com

4)   crossfitbedford.com

5)   crossfitbethal.com

6)   crossfitbethany.com

7)   crossfitboylston.com

8)   crossfitbradenton.com

9)   crossfitbranford.com

10)   crossfitbranfordct.com

11)   crossfitbrick.com

12)   crossfitbrookfield.com

13)   crossfitcanaan.com

14)   crossfitcanterbury.com

15)   crossfitcapecoral.com

16)   crossfitcertification.com

17)   crossfitcherryhill.com

18)   crossfitchicopee.com

19)   crossfitclifton.com

20)   crossfitcromwell.com

21)   crossfitdartmouth.com

22)   crossfitdavenport.com

23)   crossfitdavie.com

24)   crossfitdaytonabeach.com

25)   crossfitdeepriver.com

26)   crossfitdeerfieldbeach.com

27)   crossfitdeltona.com

28)   crossfitdevon.com

29)   crossfiteaston.com

30)   crossfiteastorange.com

31)   crossfitedison.com

32)   crossfitelizabeth.com

33)   crossfitenfield.com

34)   crossfitfacilities.com

35)   crossfitfortmyersbeach.com

36)   crossfitfoxboro.com

37)   crossfitframingham.com

38)   crossfitgloucester.com

39)   crossfitgreenacres.com

40)   crossfitgreenwich.com

41)   crossfitgreenwichct.com

42)   crossfitguilford.com

43) crossfitguilfordct.com

44) crossfithamden.com

45) crossfithamdenct.com

46) crossfitholyoke.com

47) crossfithomestead.com

48) crossfitirvington.com

49) crossfitkillingworth.com

50) crossfitlauderhill.com

51) crossfitlitchfield.com

52) crossfitmargate.com

53) crossfitmercerisland.com

54) crossfitmiamigardens.com

55) crossfitmisfits.com

56) crossfitnaugatuck.com

57) crossfitneedham.com

58) crossfitnewark.com

59) crossfitnewington.com

60) crossfitnewlondon.com

61) crossfitniantic.com

62) crossfitnorthhaven.com

63) crossfitnorthhavenct.com

64) crossfitnorthport.com

65) crossfitnorwich.com

66) crossfitoldlyme.com

67) crossfitpalmcoast.com

68) crossfitpanamacity.com

69) crossfitparadisevalley.com

70) crossfitpassaic.com

71)   crossfitpaterson.com

72)   crossfitpembrokepines.com

73)   crossfitpensacolabeach.com

74)   crossfitpinellaspark.com

75)   crossfitplantation.com

76)   crossfitpompanobeach.com

77)   crossfitportstlucie.com

78)   crossfitprospect.com

79)   crossfitprovincetown.com

80)   crossfitquincy.com

81)   crossfitquinnipiac.com

82)   crossfitrockyhill.com

83)   crossfitsaintpetersburg.com

84)   crossfitsanford.com

85)   crossfitseymour.com

86)   crossfitshelton.com

87)   crossfitsimsbury.com

88)   crossfitsouthbury.com

89)   crossfitsouthington.com

90)   crossfitsouthingtonct.com

91)   crossfitsouthwindsor.com

92)   crossfitspringfieldil.com

93)   crossfitstuart.com

94)   crossfitsunrise.com

95)   crossfittamarac.com

96)   crossfittaunton.com

97)   crossfittolland.com

98)   crossfittorrington.com

99)    crossfittrenton.com

100)   crossfittrumbull.com

101)   crossfituconn.com

102)   crossfitunioncity.com

103)   crossfitvenicebeach.com

104)   crossfitwallinford.com

105)   crossfitwallingfordct.com

106)   crossfitweathersfield.com

107)   crossfitwestbrook.com

108)   crossfitwestport.com

109)   crossfitwestportct.com

110)   crossfitwilton.com

111)   crossfitwolcott.com

112)   crossfitwoodmont.com

113)   truthaboutcrossfit.com

30.    Beginning around 2001, individual Defendants created and now host the website "www.resultsplus.com", which offers fitness services directly competitive to CrossFit.

31.    In furtherance of their scheme, individual Defendants created the website www.crossfitmisfits.com ("Defendants' Misfit website") to drive consumers to Results Plus fitness services by capitalizing on the famous CrossFit name.  Their initial purpose, on information and belief, was to register the CrossfitMisfits.com domain in the hopes that Affiliates which had already adopted "CrossFit Misfits" as their authorized gym /box name would be forced to purchase the domain from Defendants.  As of January 28, 2011, the page remained a parked page, since CrossFit's Portland, Maine Affiliate had instead registered crossfitmf.com on or around September 2010.  Their homepage at resultsplus.com also contains a link to this CrossfitMisfits.com page.

32.     On information and belief, Defendants registered crossfitcertification.com and crossfitfacilities.com because they anticipated the URLs would be frequently used by consumers searching for CrossFit certifications and facilities.  As noted above, CrossFit "certifications" are offered exclusively by Plaintiff CrossFit and are a key way in which CrossFit controls its brand and the quality associated with its CROSSFIT Mark.  On information and belief, in an effort to drive consumers away from CrossFit and to Results Plus, Defendants linked www.crossfitcertification.com and www.crossfitfacilities.com to automatically re-direct to their CrossFit Misfits website.

33.     Collectively these domain names are referred to herein as the "CrossFit" domains.

34.     On information and belief, around 2010, individual Defendant Dave Parise began selling the CrossFit-related domain names to licensed Affiliates for profit.

35.     On information and belief, Dave Parise demanded, and ultimately received, payment in excess of $200 for each of the "CrossFit" domains.  For example, on April 25, 2013, a CrossFit Affiliate e-mailed Dave Paris to inquire about the domain name crossfitgreenwich.com (number 41 above) for his gym, and that same day received the following response from Dave Parise (emphasis added):

> Hey Ethan Long story short I own over 250 CrossFit domains along with other names... I recently brought the name down $100 I will except in transfer immediately the name to you via Go Daddy for $250, I'll save you the time energy stress and cost of thinking that this is a legal [sic] it is not. **I've been doing this for the last three years and been selling CrossFit names so far sold over 50 for 350**... So $250 it is yours you can call me at my office at anytime 203-288-8822 just ask for Dave

36.     Defendants' conduct, in registering "CrossFit" domains for the express and avowed purpose of profiting off of the CROSSFIT mark, is willful and

intentional exploitation of a mark which they know they have no right over and which belongs exclusively to CrossFit.

37.     On information and belief, each of the named co-Defendants were acting in concert with the others, as their agents, alter egos, and/or licensees and are therefore directly liable for the acts of each Defendant alleged herein.

## FIRST CAUSE OF ACTION

### CYBERSQUATTING (All CrossFit-related Domain names)

### (15 U.S.C. 1125(d))

38.     CrossFit incorporates by reference all other paragraphs contained in this Complaint as if stated herein.

39.     CrossFit owns the CROSSFIT Mark, registered on the principal register of the United States Patent and Trademark Office as U.S. Reg. Nos. 3,007,458; 3,826,111; 4,049,689,  4,122,681; and 4,245,769.

40.     CrossFit has at all relevant times exclusively owned the CROSSFIT mark in the United States for use relating to the registered services, by virtue of its registration and continued extensive use.  The CROSSFIT mark was both registered on the principal register, distinctive and a famous mark for the relevant goods and services prior to Defendants' purchase of the "CrossFit" domains.

41.     Defendants purchased the CrossFit domains from 2010 to the present. Defendants purchased and use the domain names containing the CROSSFIT Mark with the bad faith intent to profit from the goodwill of the CrossFit, including by selling the domain names to licensed CrossFit Affiliates at an inflated price:

      a.     The CROSSFIT mark was well-established and famous at the time of Defendants' purchase of the domain names.

      b.     The "CrossFit" domains contain the entire and identical "CrossFit" trademark, most of them adding only a geographic descriptor to denote a gym location, and in some instances a name or descriptive word which generally only heightens the affiliation

with CrossFit.

c.    On information and belief, at no time have Defendants made any bona fide offering of any goods or services under the CROSSFIT mark.

d.    Defendants have admittedly sold over 50 "CrossFit" domains at $350 each (at least $17,500), and use this admission to drive future sales of other "CrossFit" domains, which sales are on information and belief to CrossFit Affiliates who are authorized users of the CROSSFIT marks.

e.    Prior to the sale of these domains, on information and belief, Defendants had no bona fide content on the "CrossFit" domains but instead used them (other than the two for crossfitmisfit.com redirects) for click-through ads.  These click-through ads that often lead to competitors of CrossFit, and on information and belief were revenue-generating.  *See* Exhibit B, a true and correct copy of printouts of the parked pages for many of the websites. Thus, Defendants secured click-through revenues from the domain names until such time as they are sold for a handsome profit.

f.    The sheer quantity of the hundreds of "CrossFit" domains shows a pattern of acquisition of multiple domain names using the famous and distinctive CROSSFIT mark.

g.    The CROSSFIT mark is highly distinctive and famous, as has already been found by this very Court.

42.    This cybersquatting includes CrossfitMisfits.com, which was registered, on information and belief, after Crossfit Misfits became an Affiliate of CrossFit in Portland, Maine.  While ultimately Defendants decided to launch different content on that site, on information and belief, their initial intent on information and belief was to profit from selling the site to a CrossFit Affiliate as they had with their other

numerous sites.

43.     In addition, each of the "CrossFit" domains incorporates an identical or confusingly similar mark to the CROSSFIT mark in the domain name, even though it was registered on the principal register, highly distinctive and famous at the time of the domain name registrations.

44.     Accordingly, CrossFit is entitled to relief for cybersquatting under, *inter alia*, both subsections (i), (ii)(I) and (ii)(II) of the cybersquatting provisions of 15 U.S.C. 1125(c)(2)(A).

45.     The Defendants first used the CROSSFIT mark, on information and belief, after October 6, 2006.  Defendants willfully intended to trade on the recognition of the famous CROSSFIT mark or harm the reputation of the famous CROSSFIT mark.

46.     Such cybersquatting was done willfully and in bad faith, knowing it would result in likely confusion and deception of others, and the profiting off of use of the CROSSFIT mark in a domain name.

47.     CrossFit has suffered damages in an amount to be established after proof at trial or in the statutory amount including $100,000 per domain name, both for the registrations still with Defendants listed above, as well as the other domain names containing CROSSFIT or a confusingly similar variant that Defendants have already sold.

48.     CrossFit is further entitled to the disgorgement of Defendants' profits for their willful revenue and unjust enrichment from the wrongful conduct, including the admitted at least $17,500 for sale of at least 50 domain names for $350 each.

49.     CrossFit is entitled to enhanced damages up to treble, punitive damages, and attorney fees as a result of Defendants' bad-faith conduct, done with malice, oppression and/or fraud.

50.     CrossFit's remedies at law are inadequate, entitling it to an injunction enjoining Defendants' cybersquatting, including an injunction directing the

Defendants and the registrar of the domain names to transfer the registration in the "CrossFit" domains to CrossFit.

## SECOND CAUSE OF ACTION

## CYBERSQUATTING

## (Crossfitcertification.com and crossfitfacilities.com Domain names)

## ( 15 U.S.C. 1125(d))

51.     CrossFit incorporates by reference all other paragraphs contained in this Complaint as if stated herein, including in the First Cause of Action for Cybersquatting.

52.     CrossFit owns the CROSSFIT Mark, registered on the principal register of the United States Patent and Trademark Office as U.S. Reg. Nos. 3,007,458; 3,826,111; 4,049,689,  4,122,681; and 4,245,769

53.     CrossFit has at all relevant times exclusively owned the CROSSFIT mark in the United States for use relating to the registered services.  This mark was both registered on the principal register, distinctive and a famous mark prior to Defendants' purchase of the "CrossFit" domains.

54.     Defendants' purchased the CrossFit domains, domain names containing the CROSSFIT Mark from 2010 to the present.

55.     Defendants' purchased and registered the domain names www.crossfitcertification.com and www.crossfitfacilities.com that are identical or confusingly similar to CrossFit's trademark, and were first registered by Defendants on July 29, 2011.  Those who see and click on a "CrossFit" domain whose only other indication is "certification" of "facilities" are led to reasonably conclude that they are clicking on a site which provides details from a source able to offer certification, to a list of those certified by CrossFit's certification program, or a comprehensive list of facilities where CrossFit's services are offered.  Instead, Defendants' ultimate goal and effect of owning those domains is to direct persons looking for such items instead to a crossfitmisfits.com website whose only aim is to convert those looking for

CrossFit to Results Plus leads.  In doing so, the practice of redirecting using these domains misleads and deceives consumers for the express purpose of benefitting off of that deception, all by using the CROSSFIT mark.

56.     Defendants have employed the domain names containing the CROSSFIT Mark in connection with the sale, offering for sale, distribution or advertising of goods and/or services.

57.     Such use was done willfully and with knowledge that such use would or was likely to cause confusion and deceive others.

58.     Defendants purchased and operate the www.crossfitcertification.com and www.crossfitfacilities.com domain names with the bad-faith intent to profit from consumer confusion, the fame and distinctiveness of the CROSSFIT mark, and the goodwill associated with the CROSSFIT mark:

   a.     CrossFit's exact trademark is included in the domain name.

   b.     On information and belief, Defendants were aware that CrossFit offered specialty "certification" courses and believed consumers would visit Defendants' www.crossfitcertification.com webpage in search of certification courses or a list of certified persons.

   c.     These domains are intuitive domain names that many internet viewers would simply type in initially to find information about CrossFit affiliation or certification, which on information and belief was a pattern that Defendants intended to capitalize off of.

   d.     On information and belief, Defendants were aware that CrossFit provides Affiliate facilities throughout the United States and believed consumers would visit Defendants' www.crossfitfacilities.com webpage in search of CrossFit gyms.

   e.     Defendants registered and operate the domain names with the intent to divert consumers from CrossFit's Mark to its Results Plus online location, harming the goodwill represented by the

CROSSFIT Mark for the purposes of commercial gain.

f.      Defendants registered and operate the domain names with the intent to divert consumers from CrossFit's Mark to its Results Plus online location, harming the goodwill represented by the CrossFit Mark for the purposes of tarnishing and disparaging CrossFit's Mark.

g.      Defendants registered and operate the domain names with the intent to divert consumers from CrossFit's Mark to its Results Plus online location, harming the goodwill represented by the CrossFit Mark by creating a likelihood of confusion as to the source, sponsorship, affiliation, and endorsement of Defendants' website.

h.      Defendants maintain multiple domain names identical or confusingly similar to CrossFit's Mark.

59.     In addition, the two "CrossFit" domains subject to this Cause of Action incorporate an identical or confusingly similar mark to the CROSSFIT mark in the domain name, even though it was registered on the principal register, highly distinctive and famous at the time of registration.

60.     Accordingly, CrossFit is entitled to relief for cybersquatting under, *inter alia*, both subsections (i), (ii)(I) and (ii)(II) of the cybersquatting provisions of 15 U.S.C. 1125(c)(2)(A).

61.     The Defendants first used the CROSSFIT mark, on information and belief, after October 6, 2006.  By reason of the dilution, Defendants willfully intended to trade on the recognition of the famous CROSSFIT mark or harm the reputation of the famous CROSSFIT mark.

62.     Such cybersquatting was done willfully and in bad faith, knowing it would result in likely confusion and deception of others, and the profiting off of use of the CROSSFIT mark in a domain name.

63.    CrossFit has suffered damages in an amount to be established after proof at trial or in the statutory amount including $100,000 per domain name.

64.    CrossFit is further entitled to the disgorgement of Defendants' profits for their willful sales and unjust enrichment.

65.    CrossFit is entitled to enhanced damages up to treble, punitive damages, and attorney fees as a result of Defendants' bad-faith conduct, done with malice, oppression and/or fraud.

66.    CrossFit's remedies at law are inadequate, entitling it to an injunction enjoining Defendants' cybersquatting, including an injunction directing the Defendants and the registrar of the two "CrossFit" domains to transfer the registration in the CrossFit-related domain names to CrossFit.

## THIRD CAUSE OF ACTION

## TRADEMARK INFRINGEMENT

### (15 U.S.C. §§ 1114, 1125 *et seq.* and Common Law)

67.    CrossFit incorporates by reference all other paragraphs contained in this Complaint as if stated herein.

68.    CrossFit owns the CROSSFIT mark, registered on the principal register of the United States Patent and Trademark Office as Reg. Nos. 3,007,458; 3,826,111; 4,049,689,  4,122,681, and 4,245,769.

69.    Defendants have used this mark or a confusingly similar variation of the mark in connection with the sale, offering for sale, distribution or advertising of goods and/or services.  Defendants' use of the infringing mark has caused confusion in the marketplace, is likely to cause both confusion and mistake, and is likely to deceive as to source, affiliation, sponsorship or other relationship between CrossFit's mark and Defendants; the domain names used by Defendants are identical or substantially similar in sound, appearance and meaning to CrossFit's trademark.

70.    This use includes using domain names with "CrossFit" to house homepages with click-through advertisements of services or goods competitive to or

related to CrossFit's.  On information and belief, these click-through ads are revenue generating.

71.     This also includes the two "CrossFit" domains which redirect to CrossfitMisfits.com are used to create a likelihood of confusion and exploitation of the CROSSFIT goodwill which will ultimately result in CrossFit's competitor Results Plus obtaining interest in its services and revenues.  This is no more permissible than it would be for Coke to create PepsiSeller.com, to appear as the identified webpage on search result, the true purpose being to automatically redirect to yet another site which explained why they should buy Coke instead.

72.     Such use was done willfully and with knowledge that such use would or was likely to cause confusion and deceive others.

73.     As a direct and proximate result of Defendants' trademark infringement, CrossFit has been damaged within the meaning of 15 U.S.C. § 1114 *et seq*.

74.     Defendants' use constitutes a counterfeit use, was willfully used, and thus CrossFit is entitled to statutory damages of up to $2 million per counterfeit mark per type of goods or services sold, offered for sale, or distributed, under 15 U.S.C. § 1117(c).

75.     As a direct and proximate result of Defendants' trademark infringement, CrossFit has been damaged within the meaning of 15 U.S.C. § 1125 *et seq*.

76.     CrossFit has suffered damages in an amount to be established after proof at trial or in the statutory amount.

77.     CrossFit is further entitled to disgorge Defendants' profits for their resulting sales and unjust enrichment.

78.     This case qualifies as an "exceptional case" within the meaning of 15 U.S.C. § 1117(a) in that Defendants' actions were malicious, fraudulent, deliberate and willful, and taken in bad faith, entitling CrossFit to its attorney's fees and a trebling of its damages.

///

79.     Such acts, as alleged above, were done with malice, oppression and/or fraud, thus entitling CrossFit to exemplary and punitive damages.

80.     CrossFit's remedies at law are inadequate, entitling CrossFit to an injunction enjoining Defendants' trademark infringement.

## FOURTH CAUSE OF ACTION

### DILUTION OF FAMOUS AND DISTINCTIVE MARK

### (15 U.S.C. 1125(c) & Cal. B&P Code § 14330)

81.     CrossFit incorporates by reference all other paragraphs contained in this Complaint as if stated herein.

82.     The CROSSFIT trademark is a famous and distinctive mark for the services listed in Exhibit A, and acquired such status prior to the time Defendants began their use, because prior to that time:

       a.    The mark has a high degree of inherent and acquired distinctiveness;

       b.    The mark has been used exclusively by CrossFit for a long duration for the goods and services indicated by CrossFit;

       c.    The advertising and publicity received by the mark has been very significant nationally;

       d.    The geographical trading area of the mark encompassed at least the entire United States, and the Internet;

       e.    There were many highly prominent channels CrossFit used for the goods and services under the mark, and Defendant has since chosen to use the ubiquitously stationed mediums of the Internet and national press;

       f.    The mark was highly recognized in the United States, and was highly affiliated with CrossFit;

       g.    On information and belief, there were no other parties that use the CROSSFIT mark for similar goods and services as those of

1   CrossFit; and

2   83.   Such fame and high distinctiveness has already been recognized by this

3   Court previously.

4   84.   Defendants' acts, as alleged above, create a likelihood of dilution of the

5   distinctive quality of the CROSSFIT Mark.

6   85.   Such acts were done willfully intending to trade on the recognition of the

7   famous CROSSFIT mark and/or harm its reputation.

8   86.   CrossFit's remedies at law are inadequate, entitling CrossFit to an

9   injunction enjoining Defendants' further dilution of the CROSSFIT Mark.

10   87.   CrossFit is further entitled to statutory damages up to $100,000 per

11   domain or $2 million, its damages in an amount to be established at trial, attorney's

12   fees and costs, trebling of damages for willfulness, and Defendants' profits and unjust

13   enrichment for the willful violating conduct.

14   **FIFTH CAUSE OF ACTION**

15   **COMMON LAW UNFAIR COMPETITION**

16   88.   CrossFit incorporates by reference all other paragraphs contained in this

17   Complaint.

18   89.   CrossFit has trademark rights throughout the entire United States to the

19   mark CROSSFIT, including in California.  The claims alleged above also establish

20   unfair competition compensable under the common law.

21   90.   As a direct and proximate result of Defendants' wrongful acts, CrossFit

22   has suffered and continues to suffer substantial pecuniary losses and irreparable

23   injury to its business reputation and goodwill.

24   91.   Such acts have caused damages in an amount to be established at trial.

25   92.   Such acts, as alleged above, were done with malice, oppression and/or

26   fraud, thus entitling CrossFit to exemplary and punitive damages.

27   93.   CrossFit's remedies at law are inadequate, entitling CrossFit to an

28   injunction enjoining Defendant's further unfair competition.

## SIXTH CAUSE OF ACTION

## UNFAIR COMPETITION–CALIFORNIA BUSINESS & PROFESSIONS CODE §17200

94.     CrossFit incorporates by reference all other paragraphs contained in this Complaint.

95.     Defendants, by engaging in the wrongful conduct alleged in the Complaint have engaged in unlawful, unfair or fraudulent business act(s) or practice(s) within the meaning of Business and Professions Code §§ 17200 et seq.

96.     Defendants' unlawful, unfair or fraudulent business act(s) or practice(s) have resulted in an unfair competitive advantage to Defendants and have damaged CrossFit's business, by virtue of the acts alleged herein.

97.     Because of Defendants' unlawful, unfair or fraudulent business act(s) or practice(s), CrossFit is entitled to full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such unfair business acts or practices.

98.     CrossFit is entitled to its attorneys' fees and costs in pursuing this action.

99.     CrossFit's remedies at law are inadequate, entitling CrossFit to an injunction enjoining Defendants' further unfair competition.

## PRAYER FOR RELIEF

WHEREFORE, CrossFit demands the following relief:

1.     A judgment in favor of CrossFit and against Defendants on all counts;

2.     Preliminary and permanent injunctive relief as requested above, including for transfer of the registrations in the CrossFit-related domain names by Defendants and/or the domain name registrar(s);

3.     Damages in an amount to be determined at trial, including enhancement up to treble damages;

4.     Defendants' unjust enrichment and/or disgorgement of Defendants' profits;

5.      Enhancement and trebling of damages due to willfulness and bad faith;

6.      Exemplary and punitive damages;

7.      Pre-judgment interest at the legally allowable rate on all amounts owed;

8.      Statutory damages of up to $2 million per infringement and dilution, and $100,000 per "CrossFit" domain involved.

9.      Costs, expenses and fees under, *inter alia*, 15 U.S.C. § 1117(a);

10.     Restitution;

11.     Attorney's fees under, among others, 15 U.S.C. §§ 1117(a) *et seq.* as an exceptional case and Cal. B&P §§ 17200 *et seq*.; and

11.     Such other and further relief as this Court may deem just and proper to fully compensate CrossFit.


Dated:  May 7, 2013                    MINTZ LEVIN COHN FERRIS GLOVSKY AND
                                       POPEO PC


                                   By  s/Ben L. Wagner
                                       Micha Danzig, Esq.
                                       Ben L. Wagner, Esq.
                                       Justin S. Nahama, Esq.

                                       *Attorneys for Plaintiff*
                                       *CROSSFIT, INC.*

1

## DEMAND FOR JURY TRIAL

2     Plaintiff hereby demands a jury trial as to all issues that are so triable.

3

4 Dated:  May 7, 2013              MINTZ LEVIN COHN FERRIS GLOVSKY AND
                                   POPEO PC
5

6                                  By  s/Ben L. Wagner
7                                      Micha Danzig, Esq.
                                       Ben L. Wagner, Esq.
8                                      Justin S. Nahama, Esq.

9
                                       *Attorneys for Plaintiff*
10                                     *CROSSFIT, INC.*

11
      16908454v.3
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

23